May it please the Court, my name is Sandy Svetkov of the Lurack Coughlin Law Firm here in San Francisco. I represent the appellant, Clarence Leroy Daniels. Mr. Daniels appeals the dismissal of his civil rights suit. Briefly, his complaint alleges that for over a year he was denied adequate medical treatment by prison doctors for severe throat pain. Ultimately, he was referred to an outside provider. He was diagnosed with throat cancer. His voice box, part of his tongue and neck muscles were removed. And he has, according to prison records, some six months to live. Six months was some time ago. Could you just give us where he is? What's his status today? You know, I've written. We've exchanged correspondence, but I'm not sure of his status. As far as I know, he is confined. He is alive. And he is aware of the proceedings because I've received mail from him. And his condition is as it was. It's terminal. If he should die before resolution of this case, does he have an estate that would? He does. He has family. He has a daughter. He has a niece. The prison records that you have attached to the opening brief show that they attempted to place him with a daughter, but the daughter has children and couldn't take him. The niece I think they're still negotiating about. He did not want to go to a hospice facility. Okay. And there's no dispute about the survivorship of the action? That hasn't come up as yet. Okay. The district court, Judge Breyer, found that Mr. Daniels stated a cognizable claim under the Civil Rights Act for deliberate indifference to his medical needs. There have been a series of cases involving exhaustion. Judge Breyer held that there's been sufficient exhaustion as to all defendants in the case except the remaining two doctors, and the failure of exhaustion with respect to the doctors is they weren't named. The administrative grievance process describes the problem, describes that doctors were responsible for the problem. One of the doctors who is a named defendant, Dr. Lucene, actually signed off on one of these grievances. If you look at the record on page 32, he says, We regret the delay in obtaining this referral, referring to the outside provider. And it's signed by A.D. Lucene, Andrew D. Lucene, the doctor who was one of the defendants in the case. So our submission prior to last Monday was that Mr. Daniels did all that was required of him by the California Code of Regulations, that is, to identify the problem and the relief sought. And he went through the entire process, including up to the director level, and was denied or actually was midway through the process he was ultimately sent out. But it was too late. The bottom line, do you come within Butler or not? We come within Butler. I think your order asking for argument and my 28-J letter crossed perhaps in the mail. Our view is that Butler is dispositive. It ratifies the position in our briefs. And in fact, one of the cases that Judge Breyer relied on, Brown v. Sykes, doesn't stand for the proposition for which it was cited by Judge Breyer. He said you have to identify the defendant in the administrative grievance. But if you read Brown v. Sykes, identify means the position, not the name. And in fact, the Court goes so far in Brown v. Sykes as to say that. He doesn't have to provide names he doesn't have. And so I think under Brown v. Sykes and clearly under this Court's controlling decision in Butler, this case should go back. Now, you had raised on the issue of mootness the ability of the State to revive the other exhaustion issue, the procedural default issue, that would still be alive in this case if we took it up. Now, what's your position on that? Well, no, I think it comes up differently. I think because Mr. Daniels is dying, I felt that in his best interest, I should put a belt and suspenders, pursue this appeal. I understand. So you went back. And I went back. But his appeal was denied. And we asked for judicial notice of that. We appealed both to the prison and to the Department of Corrections. The Department of Corrections responded untimely. And you have to go to the institution. We have gone, and that's why I filed a second request for judicial notice, which is before you, to show you that I had simultaneously attempted to exhaust. But because we were denied, the suggestion of mootness is inaccurate, because the prison officials have refused to entertain this administrative appeal. And I don't know what more exhaustion requires then for the prison to have an opportunity to address the problem. The problem was, I need treatment. And they sent him out for treatment just too late and way too late. Unless the Court has any questions, I've reserved my time for rebuttal. Thank you. Thank you. Thank you. May it please the Court, good morning. My name is Brad Solomon. I'm from the California Attorney General's Office. And I represent the appellees in this matter. First of all, Your Honors, this case does not fall within the Butler case. The Butler case is an extremely narrow decision. I'm going to distinguish it for you today. And I'm also going to tell you why I think the Butler case was, in some respects, wrongly decided with regard to... You may be wasting your breath on that if you want to talk to your colleagues about a petition for re-hearing in bank. Absolutely, Your Honor. You're bound by it. You do understand that. I certainly understand it. It's not applicable in this case, though. And let me tell you why. The Butler case was an ABA case. It dealt with different regulations than are the ones that are applicable here. It also... Different prison regulations or different federal... Different California Code of Regulations that control the prison administrative grievance procedure. Specifically, 3084.2B, which was not applicable in Butler, which is applicable in our case. And that says, specifically, that as a precondition to filing your grievance, you must... The parole... The inmate shall attempt to resolve the grievance informally with the involved staff. And that is a precursor to then bringing your administrative grievance, which also has a requirement that you name the involved staff. The thing that... Tell me where it was required that he name the involved staff. Pursuant to the fact that 3084.2B says... You're running my numbers too fast. Give me that number again. 3084.2... 3084.2... 3084.2B of Title 15 of the California Code of Regulations requires that an inmate first informally meet with the involved staff before filing their grievance. It's implicit in that, Your Honor, that then they need to name the informed staff once the grievance is filed. I didn't bring on the bench with me that regulation. Is it here in the excerpts of record? I'm sorry. I've got it right here. But it's only implicit that they name them. Yes, Your Honor, but it's really important to note that the Eleventh Circuit in the Brown case specifically said that in the PLRA, which also doesn't talk about the exact requirements necessary for filing a grievance, that it's implicit in the PLRA that names be given in the grievance, that specific individuals be named. Now, this is an interesting case in that it's not as though... I mean, sometimes these prison grievance cases, we find that there's an allegation that the guard has mistreated or overreacted or whatever. That's not the problem here. The problem here is that he says, I was suffering these symptoms, and I tried to get the doctors to pay attention to me, and they wouldn't. Well, he went to these very doctors, and they wouldn't. At least that's his allegation. Now, are you saying that as a precondition to filing a grievance, he's got to go back to these very same doctors and say, I'm about to file a grievance against you? Absolutely. What possible purpose will that serve? The purpose that it serves is that it puts the prison on notice, as was the intent of the PLRA, that there is a problem within the system that needs to be addressed, and the prison can't know what the problem is unless the specific individuals are named. But the problem that needed to be addressed is, I'm sick, and he went in and said, I'm sick, and they ignored him. At least that's his allegation. It's more than that, Your Honor. I believe that it's also saying that the treatment I received from specific individual doctors was improper, and whether that specific treatment was improper or not relates to his grievance and his eventual claim for money damages, and that has to be addressed internally by the prison also, even if there is no possibility of money being awarded at the grievance level. If he named a B.E.R. doctor and the chief medical officer, he didn't name them by name, but he identified them as such. There were only eight doctors there. Why isn't this sufficient notice that there's a problem here? Well, first of all, Your Honor, he did not name them. He directed his appeal to those individuals, but he did not name them as individuals involved in the issue which he was grieving. If I just might, Your Honor, if we can just remember that the PLRA is a federal statute. It supersedes the state requirements with regard to filing a grievance, and the PLRA requires that the defendants be named. It requires it. The 11th Circuit. PLRA, is there a requirement that the individual names be used? Right. It is implicit in the PLRA, as the 11th Circuit said, and that's the lesser standard case. The Brown case, which we're not even relying on. We're relying on the 6th Circuit and Curry, which clearly says, there's no doubt about it, you must name the individual defendants. Brown has the same exact standard, and it says, and I'll point the Court to the exact page where it says it. It says it on page 1207, 1208 of the opinion. Section 1997E requires a prisoner to exhaust all available administrative remedies and implicit in that requirement is an obligation on the prisoner to provide those officials who will pass upon the grievance all the relevant information he has, including the identity of any officials he thinks have wronged him. You have to name names if you know the names. Identity is different from naming. Put yourself in the position of the prison officials receiving the documents from him where he has described the position of these doctors. Is there any way that the prison officials could have had doubt as to which doctors were actually involved? All they had to do was open his file. Your Honor, I don't think he described the position of the doctors involved. He described what he was looking for in terms of treatment. At least if they open his medical file. If they open his medical file, they see he's gone to every doctor that that prison has on literally tens if not a hundred occasions over the course of a couple of years, and they have to decipher what the specific grievance is. This is a Section 1983 cause of action. It's being brought against individuals in their individual capacity. There is at least a right of those named defendants to be put on notice at the prison level that they're going to be the subject of a later 1983 action. That's one of the purposes of the PLRA, and allowing for the grievance to name the specific individuals allows for that notice to take place. The Butler case did not. Can you back off just a little bit so we can come back to the form? Sure. I'm intrigued by your citation to the regs, because the regs say to describe the problem. It doesn't say anything about naming names, but it says, describe the problem and what you want, and then it directs him to use Form 602, and I believe that that's what he did. Isn't that correct? Right, Your Honor. And on that it says, describe problem, and he describes the problem to the bee yard doctor and chief medical officer. I have seen the doctor numerous times about my possibly having throat cancer. For more than a year now I have been complaining about how bad my throat hurts, and I can barely eat or drink anything. I was told that I was to be sent out to the hospital to have my throat checked out. He's described the problem. Now, you're saying he's seen every doctor in the prison. How many doctors is that? There were eight on that unit, Your Honor. Eight doctors, and you're telling us that the prison can't go to his file and find out which of the eight he's talked to, and if he's talked to all eight, aren't they all part of the problem? Your Honor, I'm telling you that he has a requirement to name the specific doctors involved. I'm telling you that the prison – Excuse me. Oh, I apologize. My question was, are you telling me that the prison cannot go to its staff, open his file, and find out which of the eight doctors he has talked to? That's correct. They don't know what specific instance he's referring to. Well, he's talking about the whole course of conduct. He is saying, if I go to a clinic and I see a different doctor every time, and at the end of a year I have not been treated, you don't think that all of those doctors are potentially culpable? In that scenario, yes. Well, what's different from this scenario? He has used what you folks at the prison told him to do. Use a form and describe the problem. It doesn't say and identify any persons that you are complaining about, does it? Your Honor, I would state that in the Curry case in the Sixth Circuit, in the Brown case, the form didn't say describe the individuals either. It said describe the problem. Okay. Well, we're not in the Sixth or the Eleventh Circuit, are we? We're in the Ninth Circuit. Correct. We're trying to deal with California's regulations, right? So I'm trying to understand what a prisoner is supposed to do. Prisoner goes to the regulations, he's given a form, and that's what he fills out. Now I'm trying to understand your concerns, which are that individual doctors not have adequate notice. And yet, when I look at this form, he's alleging a problem that doesn't seem, as a matter of common sense, hard for the hospital staff to understand, that whoever worked on this guy may be potentially at risk if, in fact, they neglected to identify and treat a throat cancer. Does that seem like such a leap of cognition? I think it's discounting the quantity of these grievances that the prison faces. And if they were to have to go back and go through every single file and determine what specific visits out of dozens that that prisoner is referring to, it would be impossible for them to put on the form and identify the doctors, if this is such a pervasive problem, identify the individuals who you think have mistreated you. I think for the same reason that it's implicit in the PLRA, according to two other circuits, that you have to name individuals, it's implicit in describe the problem you have to name the individuals. That's part of the problem. And are they always given the name of the doctors when they show up for treatment? Do they know who the doctor is? It's my understanding they do, but I... The record, you don't know that? I can't say beyond my general understanding. And even if they are given the name of the doctor, they're supposed to keep a record in their own file? The doctor they saw six months ago, the doctor they saw a year ago, that's their responsibility? Well, we know in this case he did know the doctors because he named them both in the complaint directly after the grievance procedure took place. But he named the chief medical officer. How is it hard to identify who the chief medical officer is? Your Honor, with all due respect, he did not name him. He directed his appeal to them. Yes, indeed. So he said, chief medical officer, and is there more than one chief? Your Honor, I don't believe he said the chief medical officer was involved in his care. What he did was he directed his appeal to those individuals. There was no facts whatsoever indicating what doctors were involved in his care. He didn't name that chief medical officer in the appeal. He just directed it to him. I have a question then. I looked at the Cal Code regulations, Title 15-3084, and they do not require each defendant to be named. Is that correct? In California it's not required? It's not correct, Your Honor. It's implicit in the regulation that they have to describe the problem. Rather than implication that each individual person should be named. Is there anything that tells this prisoner, you must name by name, not by office, the person you're suing? Not beyond describe the problem, no. Thank you. Thank you very much. Thank you, Your Honors. Mr. Stretkoff. It's true that this case arises under the Civil Rights Act and Butler arose under the ADA, but the exhaustion requirement is in the Prison Litigation Reform Act, the same statute. 1997E is what controls exhaustion in both cases. So that's not a basis for distinction. The same regulation, Section 3084.2, applies in both cases. 3084, as the Court recognized, says describe the problem and the action requested. In terms of the provision B about talking to involved staff, how much clearer can it be than saying for more than a year I've been complaining about my throat to the doctor? I mean, who else is involved staff? He says the doctor. Is there any indication in the record? Yes. Ultimately. It might help if you guys would let us finish our questions. I'm sorry. I know you're eager about this case, but we'll listen to you. You take more time making me rethink what my question was. I'm just trying to find out, when he said in his form, the doctor, was there anything to suggest he was isolated on a doctor or that was a generic term? Generic. Okay. Thank you. Except that. See how easy that was? Yes, but later in his appeal, and it's on page 26 of the excerpt of the record, he does name Dr. Becker when he gets to the third level of appeal. So the whole notion of getting the information and ultimately calling it to the attention of the Department, he did that. And as I said, the other doctor was one of the doctors that signed off on his grievance. And in terms of the informal nature of this thing, if he hadn't informally talked to the doctors, they could have rejected his grievance out of hand. Instead, the doctor says, I'll be glad to see you and refer it if this is medically indicated. That was in September of 2000. He still is not out of there until they finally send him out several months later. So even during the grievance period, there was delay. Dr. Lucene finally sends him out, what, on December 14th? It seems to me they addressed his grievance, they were cognizant of his grievance, and still let it fester. Okay. Thank you. Thank you. Could I ask one question of the State Attorney for just a second? If, under this regulation, his complaint had been that a doctor had mistreated him in the prison, would, under this regulation, at the meeting that's contemplated, where the inmate shall attempt to resolve the grievance informally with the involved staff, would that typically be a one-on-one meeting where only the doctor involved and the prisoner involved would be present? It's my understanding that in any context when you're grieving against an employee of the prison, that you meet specifically with the involved employee. And there's nobody else present? I can't answer that, Your Honor. No senior person is involved, no supervisor of the involved staff? I don't know, Your Honor. Thank you. Okay. Thank you very much. The case of Daniels v. California Department of Corrections is now submitted for decision.
judges: D.W. Nelson, W. Fletcher, Fisher